# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**INTERNATIONAL BROKERAGE &**
**SURPLUS LINES, INC., a Florida**
**corporation,**

       **Plaintiff,**

**v.**                         **Case No.  8:06-cv-104-T-30MSS**

**LIBERTY MUTUAL INSURANCE**
**COMPANIES, d/b/a LIBERTY**
**SYNDICATE 190; and SIMON SKEATES,**
**individually,**

       **Defendants.**

_____/

## <u>ORDER</u>

THIS CAUSE comes before the Court upon Defendants Certain Interested Underwriters at Llyod's, London, Members of Syndicate 190 for the Years of Account at Issue and Simon Skeates's Motion to Dismiss Second Amended Complaint or, In the Alternative, for More Definite Statement (Dkt. #45), Memorandum of Law in Support of Motion to Dismiss Second Amended Complaint or, In the Alternative, For More Definite Statement (Dkt. #46), Plaintiff's Opposition and Response to Defendants' Motion to Dismiss Second Amended Complaint or, In the Alternative, for More Definite Statement (Dkt. #47), and Plaintiff's Request for Oral Argument (Dkt. #48).  The Court, having considered the motions, responses, memoranda, second amended complaint, and being otherwise advised in the premises, finds that Defendants' motion should be granted as stated herein.

In the Second Amended Complaint (Dkt. #41), Plaintiff brings seven counts against Defendants, Certain Interested Underwriters at Llyod's, London, Members of Syndicate 190 for the Years of Account at Issue ("Liberty Syndicate 190") and/or Simon Skeates ("Skeates"), alleging: Count I - Breach of Contract Regarding Claims Attorney, Count II - Negligent Hiring of Claims Attorney, Count III - Negligent Retention of Claims Attorney, Count IV - Breach of Renewal Contract, Count V - Breach of Compensation Agreements, Count VI - Breach of Implied Covenant of Good Faith and Fair Dealing, and Count VII - Florida Deceptive and Unfair Trade Practices Act.

Defendant seeks to dismiss the Second Amended Complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for an order requiring Plaintiff to provide a more definite statement regarding Counts I, IV, and V pursuant to Rule 12(3) of the Federal Rules of Civil Procedure.

## Plaintiff's Allegations

Plaintiff, International Brokerage & Surplus Lines, Inc. ("IBSL") is a Florida corporation with its principal place of business in Lakeland, Polk County, Florida. Liberty Syndicate 190 is a wholly owned subsidiary of Liberty Mutual Insurance Companies and is an underwriting syndicate subscribing through underwriters at Lloyds, London. Liberty Syndicate 190 and Skeates have provided insurance related services and coverage to certain Florida based entities and individuals residing in the state of Florida on an ongoing basis. Liberty Syndicate 190 and Skeates have had specific conduct with the state of Florida through extensive business relations and dealings with IBSL.

In 1999, IBSL developed and prepared an insurance program that would provide group general commercial, liability and automobile liability insurance to companies and individuals involved in the operation of commercially registered automobiles. This program was operated under the name Diversified Truckers of the United States, Inc. ("Diversified Truckers Insurance"), a federal risk purchasing group plan. Also in 1999, IBSL entered into an agreement with Liberty Syndicate 190 to have Liberty Syndicate 190 fill the role as the lead underwriter and issuing carrier. IBSL and Liberty Syndicate 190 entered into numerous written term insurance agreements ("line slips") between 1999 and 2002.[1] In the Second Amended Complaint, Plaintiff identifies two line slips entered into by and between IBSL and Liberty Syndicate 190: (a) the "2001 Diversified Truckers Insurance Line Slip" previously attached as Exhibit "B" to the original complaint (Dkt. #1-3) for the term period of February 1, 2001 through January 31, 2002; and (b) the "2130 Line Slip" previously attached as Exhibit "C" to the original complaint (Dkt. #1-4) for the term period of January 1, 2001 through December 31, 2001.

In the Second Amended Complaint, Plaintiff also identifies three other agreements or contracts by and between IBSL and Liberty Syndicate 190 as follows: a "Contract Regarding Claims Attorney"; a "Renewal Contract"; and the "Compensation Agreement". Plaintiff has not identified whether these alleged contracts were written or oral. Further, no copies are attached to the complaint, and no terms of an oral agreement are specifically set forth.

---

[1] This Court has previously ruled in its Order (Dkt. #36) entered on September 6, 2006 that any and all claims relating to or arising under the "2000 Line Slip" or the "Initial 2130 Line Slip" should be arbitrated in London, England, pursuant to the contract between the parties.

## Motion to Dismiss Standard Under 12(b)(6).

To warrant dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Blackston v. State of Alabama, 30 F.3d 117, 120 (11th Cir. 1994), quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). Determining the propriety of granting a motion to dismiss requires courts to accept all the factual allegations in the complaint as true and to evaluate all inferences derived from those facts in the light most favorable to the plaintiff. See Hunnings v. Texaco, Inc., 29 F.3d 1480, 1483 (11th Cir. 1994). The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low. See Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 703 (11th Cir. 1985). "Unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the complaint should not be dismissed on grounds that it fails to state a claim upon which relief may be granted. Sea Vessel, Inc. v. Reyes, 23 F.3d 345, 347 (11th Cir. 1994). Nevertheless, to survive a motion to dismiss, a plaintiff must do more than merely "label" his claims. Blumel v. Mylander, 919 F.Supp. 423, 425 (M.D. Fla. 1996). Moreover, when on the basis of a dispositive issue of law no construction of the factual allegations will support the cause of action, dismissal of the complaint is appropriate. Marshall County Bd. Of Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

**Analysis**

I.    **Count I - Breach of Contract Regarding Claims Attorney against Liberty Syndicate and Skeates.**

In support of Count I, Plaintiff alleges, in pertinent part, that: at a certain point in time while the business relationship between Liberty Syndicate 190 and IBSL was active, Liberty Syndicate 190 decided to assign another of its representatives, Skeates, as Liberty Syndicate 190's claims underwriter; upon Skeates appointment as the claims underwriter for Liberty Syndicate 190, Liberty Syndicate 190 and Skeates unilaterally, wrongfully and without justification terminated the relationship with attorney, Mr. Pomeroy, who had been previously hired upon an agreement between Liberty Syndicate 190 and IBSL (the "Contract Regarding Claims Attorney") to defend against any insured claims arising under Diversified Truckers insurance; Defendants wrongfully and without justification breached the Contract Regarding Claims Attorney by terminating Mr. Pomeroy and replacing him with Mr. Litsky, an attorney with the law firm of Phelps Dunbar; during the course of Mr. Litsky's representation there existed a lack of zealous advocacy, a failure to maintain Diversified Truckers insurance's best interests, attorney's fees approximately four to five times greater than those incurred during Mr. Pomeroy's representation, and an ultimate and continuing net loss to Diversified Truckers insurance programs; and IBSL incurred damages as a result of Liberty Syndicate 190's and/or Skeates' breach of contract.

Defendants assert that Count I of the Second Amended Complaint should be dismissed pursuant to Rule 12(b)(6), since Plaintiff has failed to state a claim upon which

relief may be granted.  In the alternative, Defendants request that Plaintiff provide a more definite statement pursuant to Rule 12(e).  Defendants argue that: Plaintiff fails to allege whether the Contract Regarding Claims Attorney is an express written contract or an oral contract; Plaintiff fails to attach a copy of the contract to the complaint, or in the alternative, Plaintiff fails to allege each of the essential elements to an oral contract.

To prove a claim for breach of an oral contract, a party must prove the elements of a written contract.  See Southtrust Bank v. Export Insurance Services, Inc., 190 F.Supp.2d 1304, 1307 (M.D. Fla. 2002).  In oral contract actions, the complaint must allege the mutual formation of an oral contract, the obligation thereby assumed, consideration, and a breach. See Perry v. Cosgrove, 464 So.2d 664, 667 (Fla. 2d DCA 1985), citing Industrial Medicine Pub. Co. v. Colonial Press of Miami, Inc., 181 So.2d 19, 20 (Fla. 3d DCA 1966).  If a defendant has no sure knowledge of the exact oral contract which is allegedly the basis for the plaintiff's cause of action, then defendant may file a motion for more definite statement. See Industrial Medicine at 20; see also Rule 12(e) of the Federal Rules of Civil Procedure.

Upon a review of the allegations contained in the Second Amended Complaint in support of Count I, the Court concludes that the allegations pled by Plaintiff are so vague or ambiguous that Defendants cannot reasonably be required to frame a responsive pleading. Count I of Plaintiff's Second Amended Complaint fails to allege: whether the contract is a written contract or an oral contract; when the contract was entered into by the parties; who

was a party to such contract[2]; and the terms of the contract or the obligations created by such contract.  Accordingly, the Court grants Defendants' request that the Plaintiff provide a more definite statement as to Count I of the Second Amended Complaint.

## II.     Count II - Negligent Hiring against Liberty Syndicate and Skeates.

In support of Count II, Plaintiff alleges, in pertinent part, that: Liberty Syndicate 190 and Skeates owed a duty to IBSL as a result of their business relationship; Defendants knew, or should have known, of Mr. Litsky's unfitness to handle the insured claims associated with the Diversified Truckers insurance program; Defendants were required, or should have been required, to make an appropriate investigation of Mr. Litsky's fitness to handle the insured claims; an appropriate investigation would have revealed the unfitness or unsuitability of Mr. Litsky to handle the insured claims; it was unreasonable for Defendants to hire Mr. Litsky in light of the information Defendants knew, or should have known, regarding their unfitness or unsuitability to handle insured claims; Defendants breached their duty to IBSL by negligently hiring Mr. Litsky to handle the insured claims; as a proximate cause IBSL has been damaged in the form of lost profits.

Defendants assert that Count II of the Second Amended Complaint should be dismissed pursuant to Rule 12(b)(6), since Plaintiff has failed to state a claim upon which relief may be granted.  Defendants argue that: Plaintiff fails to allege sufficient facts to

---

[2] The allegations in the Second Amended Complaint imply that Skeates was not appointed as Liberty Syndicate 190's representative until after the Contract Regarding Claims Attorney was entered into by and between Plaintiff and Liberty Syndicate 190.  Logically, Skeates could not have been a party to such contract, and therefore, would not be individually liable under the contract.

identify whether its claims sound in tort or contract; Plaintiff fails to allege facts to identify any duty owed to it; the economic loss rule bars tort claims which are based on economic losses resulting from a breach of contract.

To allege a *prima facie* case of negligent hiring, a plaintiff must assert that: (1) the employer was required to make an appropriate investigation of the employee and failed to do so; (2) an appropriate investigation would have revealed the unsuitability of the employee for the particular duty to be performed or for employment in general; and (3) it was unreasonable for the employer to hire the employee in light of the information he knew or should have known. Malicki v. Doe, 814 So.2d 347, 362 (Fla. 2002), citing Garcia v. Duffy, 492 So.2d 435, 440 (Fla. 2d DCA 1986).

Plaintiff fails to allege, and cannot allege, that Mr. Litsky is an "employee" of Liberty Syndicate 190 or Skeates.  By virtue of a review of the Second Amended Complaint, it is clear that Mr. Litsky is an employee of the law firm of Phelps Dunbar.  Further, it is clear that Phelps Dunbar was retained to represent Liberty Syndicate 190 and/or Diversified Truckers in relation to legal services.  However, neither Phelps Dunbar or Mr. Litsky is a party to this lawsuit, nor has Plaintiff pled a cause of action based on a theory of legal malpractice.  The Court is unaware of any Florida or Eleventh Circuit case which has allowed a plaintiff to bring a common law tort action based on a negligent hiring theory against a party premised on such party's negligence in retaining an unsatisfactory law firm or attorney.

Further, Plaintiff has failed to allege a recognizable legal duty owed by Defendants to Plaintiff under a negligent hiring theory.  There is no common law duty to hire a lawyer. The duty here, if any, had to be contractual, the breach of which would be a breach of contract action.  Accordingly, Count II of the Second Amended Complaint should be dismissed with prejudice pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

## III.    Count III - Negligent Retention against Liberty Syndicate and Skeates.

In support of Count III, Plaintiff alleges, in pertinent part, that: Liberty Syndicate 190 and Skeates owed a duty to IBSL as a result of their business relationship; Defendants became aware, or should have become aware, of Mr. Litsky's unfitness to handle the insured claims associated with the Diversified Truckers insurance program; Defendants failed to discharge Mr. Litsky or satisfactorily remedy Mr. Litsky's unfitness or unsuitability to handle the insured claims; Defendants were required, or should have been required, to appropriately investigate Mr. Litsky's handling of the insured claims; an appropriate investigation would have revealed the unfitness or unsuitability of Mr. Litsky to handle the insured claims; it was unreasonable for Defendants to retain Mr. Litsky; Defendants breached their duty to IBSL by negligently retaining the services of Mr. Litsky; as a proximate cause IBSL has been damaged in the form of lost profits.

Under Florida law, a *prima facie* case of negligent retention requires the following three elements: (1) the employer was required to make an appropriate investigation of the employee and failed to do so; (2) an appropriate investigation would have revealed the

unsuitability of the employee for the particular duty to be performed or for employment in general; and (3) it was unreasonable for the employer to retain the employee in light of the information he knew or should have known.  Williams v. Asplundh Tree Expert Co., No. 3:05-cv-479-J-33MCR, 2006 WL 2868923, *8 (M.D. Fla. October 6, 2006), citing Malicki v. Doe, 814 So.2d 347, 362 (Fla. 2002).  The torts of negligent hiring and negligent retention appear to be nearly identical.  See Malicki at 362 n.15.

For the same reasons given above, the Court concludes that Count III of the Second Amended Complaint should be dismissed with prejudice pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

## IV.     Count IV - Breach of Renewal Contract Against Liberty Syndicate 190.

In support of Count IV, Plaintiff alleges, in pertinent part, that: in October of 2002, Plaintiff entered into a Renewal Contract with Liberty Syndicate 190; pursuant to the Renewal Contract, Liberty Syndicate 190 would renew its business relationship with IBSL for the next term through continued involvement in and operation of the Diversified Truckers insurance programs and the other insurance programs including "2130" in exchange for IBSL continuing to provide its services for the Diversified Truckers insurance program and ultimately for the financial benefit of Liberty Syndicate 190 and IBSL; pursuant to the renewal contract, IBSL invested in and made preparations to continue its business relationship with Liberty Syndicate 190; pursuant to the renewal contract, IBSL prepared staffing and funding measures to support the renewal of the business relationship; in 2003, Liberty Syndicate 190 notified IBSL that it was not renewing the business relationship with

IBSL; Liberty Syndicate 190 breached the renewal contract by refusing to renews its relationship with IBSL; as a result of Liberty Syndicate 190's breach of the renewal contract, IBSL has been damaged.

Liberty Syndicate 190 asserts that Count IV of the Second Amended Complaint should be dismissed pursuant to Rule 12(b)(6), since Plaintiff has failed to state a claim upon which relief may be granted.  In the alternative, Defendant requests that Plaintiff provide a more definite statement pursuant to Rule 12(e).  Defendant argues that: Plaintiff fails to allege whether the Renewal Contract is an express written contract or an oral contract; Plaintiff fails to attach a copy of the contract to the complaint, or in the alternative, Plaintiff fails to allege each of the essential elements to an oral contract.

To prove a claim for breach of an oral contract, a party must prove the elements of a written contract.  See Southtrust Bank v. Export Insurance Services, Inc., 190 F.Supp.2d 1304, 1307 (M.D. Fla. 2002).  In oral contract actions, the complaint must allege the execution of an oral contract, the obligation thereby assumed, and a breach.  Perry v. Cosgrove, 464 So.2d 664, 667 (Fla. 2d DCA 1985), citing Industrial Medicine Pub. Co. v. Colonial Press of Miami, Inc., 181 So.2d 19, 20 (Fla. 3d DCA 1966).  If a defendant has no sure knowledge of the exact oral contract which is allegedly the basis for the plaintiff's cause of action, then defendant may file a motion for more definite statement.  See Industrial Medicine at 20; see also Rule 12(e) of the Federal Rules of Civil Procedure.

Upon a review of the allegations contained in the Second Amended Complaint in support of Count IV, the Court concludes that the allegations pled by Plaintiff are so vague

or ambiguous that Liberty Syndicate 190 cannot reasonably be required to frame a responsive pleading.  Count IV of Plaintiff's Second Amended Complaint fails to allege: whether the contract is a written contract or an oral contract; which specific contract or line slip was intended to be renewed by the creation of the Renewal Contract; the terms of the Renewal Contract or the obligations created by such contract.  Accordingly, the Court grants Liberty Syndicate 190's request that the Plaintiff file a more definite statement as to Count IV of the Second Amended Complaint.

## V.      Count V - Breach of Compensation Agreement Against Liberty Syndicate 190.

In support of Count V, Plaintiff alleges, in pertinent part, that: Liberty Syndicate 190 agreed to pay IBSL twenty-percent (20%) in compensation in exchange for IBSL's services related to the aforementioned insurance programs;  Liberty Syndicate 190 breached the Compensation Agreement with IBSL with respect to the Diversified Truckers insurance program and the other similar insurance programs including "2130", by ultimately failing to pay the twenty-percent (20%) in compensation agreed upon by IBSL and Liberty Syndicate 190; IBSL has incurred damages as a consequence of Liberty Syndicate 190's breach.

Liberty Syndicate 190 asserts that Count V of the Second Amended Complaint should be dismissed pursuant to Rule 12(b)(6), since Plaintiff has failed to state a claim upon which relief may be granted.  In the alternative, Defendant requests that Plaintiff provide a more definite statement pursuant to Rule 12(e).  Defendant argues that: Plaintiff fails to allege whether the Compensation Agreement is an express written contract or an oral contract;

Plaintiff fails to attach a copy of the contract to the complaint, or in the alternative, Plaintiff fails to allege each of the essential elements to an oral contract.

Upon review of the Second Amended Complaint and incorporated exhibits attached to the original complaint, the 2130 Line Slip[3] contains a provision providing for a twenty-percent commission.  However, Plaintiff has not brought a cause of action against Liberty Syndicate 190 for a breach of the 2130 Line Slip.  Rather, Plaintiff alleges a breach of a "Compensation Agreement" that has not been attached to the Second Amended Complaint or any other pleading.  In the alternative, if Plaintiff intends to bring a cause of action for the breach of an oral Compensation Agreement, then Count V of Plaintiff's Second Amended Complaint fails to allege: whether the contract is a written contract or an oral contract; which specific contract or line slip, if any, the Compensation Agreement applies; which specific contract or line slip, if any, was breached; the terms of the Compensation Agreement or the obligations created by such agreement.[4]  Accordingly, the Court grants Defendant's request that the Plaintiff provide a more definite statement as to Count V of the Second Amended Complaint.

---

[3] Dkt. #1-4.

[4] The Court notes that Plaintiff does not identify the underlying value of which the 20 percent compensation is to be based (e.g. the Compensation Agreement could provide a 20% commission based on Liberty Syndicate 190's net income, gross income, premiums, profits, etc.)

**VI.    Count VI - Breach of the Implied Covenant of Good Faith and Fair Dealing Against Liberty Syndicate 190 and Skeates.**

In support of Count VI, Plaintiff alleges, in pertinent part, that: Defendants had an implicit obligation under the agreements/contracts to act in Plaintiff's best interests and to avoid self-dealing and conflicts of interest; Defendants committed acts in bad faith and dealt unfairly with Plaintiff in meeting Liberty Syndicate 190's obligations under the agreements/contracts; the manner and fashion by which Defendants performed and breached the agreements/contracts constitutes a breach of the implied covenant of good faith and fair dealing; as a result Plaintiff has been damaged.

Defendants assert that Count VI of the Second Amended Complaint should be dismissed pursuant to Rule 12(b)(6), since Plaintiff has failed to state a claim upon which relief may be granted.  Defendants argue that: under Florida law, there is no independent cause of action for breach of an implied covenant of good faith and fair dealing; Florida law maintains that all contracts include an implied covenant of good faith and fair dealing; a breach of an implied covenant is simply a part of the performance of specific contractual obligations; a claim for breach of the implied covenant cannot be maintained without the breach of an express term of a contract; the Second Amended Complaint fails to allege the breach of an express term of any contract or which agreement or contract this count relates. Defendants' argument is well taken.

A plaintiff cannot maintain a claim for breach of the implied duty of good faith and fair dealing unless the plaintiff asserts a breach of an express contract provision.  Centurion

<u>Air Cargo, Inc. v. United Parcel Service Co.</u>, 420 F.3d 1146, 1151 (11th Cir. 2005).  In order to state a claim for breach of the implied duty of good faith and fair dealing, Plaintiff must assert allegations different than those underlying the accompanying breach of contract claim. <u>Shibata v. Lim</u>, 133 F.Supp.2d 1311, 1319 (M.D. Fla. 2000).

Plaintiff argues that the Second Amended Complaint asserts: (1) more than one "breach of an express warranty of a contract provision"; (2) nothing in the complaint indicates that Plaintiff is claiming a "breach of implied duty in order to override the express terms of a contract"; and (3) the allegations which constitute Plaintiff's claim for breach of the implied covenant of good faith and fair dealing "are different than the accompanying breach of contract" claims.

Notably, Plaintiff does not point to any express provision that Defendants breached. As discussed above, Plaintiff has not: attached copies of any of the alleged contracts/agreements; alleged whether such contracts/agreements are written or oral; alleged whether Skeates was a party to any of the contracts/agreements; or provided the specific terms of such contracts/agreements.

The Court is not persuaded by Plaintiff's argument that its breach of the implied covenant of good faith and fair dealing count is different from its breach of contract/agreement counts (Counts I, IV and V).  As discussed above, the Court has concluded that Plaintiff should provide a more definite statement as to Counts I, IV, and V. The duty of good faith and fair dealing does not attach until the Plaintiff can establish a specific contractual obligation.  <u>See</u> <u>Johnson Enter. of Jacksonville, Inc. v. FPL Group, Inc.</u>,

162 F.3d 1290, 1314 (11th Cir. 1998).  Consequently, in Count VI, Plaintiff fails to state a claim for breach of the implied duty of good faith and fair dealing.  For these reasons, Defendants' request to dismiss Count VI of the Second Amended Complaint pursuant to Rule 12(b)(6) is granted without prejudice.

## VII.   Count VII - Deceptive Trade Practices Against Liberty Syndicate 190 and Skeates.

In support of Count VII, Plaintiff alleges, in pertinent part, that: Liberty Syndicate 190 is a wholly owned subsidiary of Liberty Mutual Insurance Companies located in Boston Massachusetts and is an underwriting syndicate subscribing through Boston underwriters at Lloyds, London; Liberty Syndicate 190 and Skeates have provided insurance related services and coverage to certain Florida based entities; Defendants committed acts against Plaintiff that are unconscionable and unfair to Plaintiff through their cumulative actions, including their wrongful and unjustified breaches of contract and termination of Mr. Pomeroy's legal representation and subsequent hiring and retention of Mr. Litsky; Plaintiff has incurred damages in the form of lost profits.

Defendants assert that Count VII of the Second Amended Complaint should be dismissed pursuant to Rule 12(b)(6), since Plaintiff has failed to state a claim upon which relief may be granted.  Defendants argue that: under Florida law, a private right of action cannot be maintained under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) unless the alleged deceptive or unfair conduct of which the plaintiff complains involves a consumer transaction; Plaintiff's allegations do not involve a consumer transaction.

Prior to July 1, 2001, FDUTPA provided that "[i]n any individual action brought by a consumer who has suffered a loss as a result of a violation of this part, such consumer may recover actual damages, plus attorney's fees and court costs." Fla. Stat. §501.211(2). However, FDUTPA was amended on July 1, 2001, and the amendment replaced the word "consumer" with the word "person."[5]  The current version of FDUTPA provides that "[i]n any action brought by a *person* who has suffered a loss as a result of a violation of this part, such *person* may recover actual damages, plus attorney's fees and court costs." (Emphasis added.)  See § 501.211(2)., Fla. Stat. Ann., Historical and Statutory Notes.  Courts have found that this amendment demonstrates a clear legislative intent to allow a broader base of complainants who have been injured by violations of FDUTPA to seek damages.  See Advanced Protection Technologies, Inc. v. Square Company, 390 F. Supp. 2d 1155 (M.D. Fla. 2005).

**A.      Plaintiff falls within the meaning of a "Consumer" under Fla. Stat. §501.203(7).**

Pursuant to Section 501.203(7), "consumer" means "an individual; child, by and through its parent or legal guardian; business; firm; association; joint venture; partnership; estate; trust; business trust; syndicate; fiduciary; corporation; any commercial entity, however denominated; or any other group or combination."  §501.203(7), Florida Statutes (2005). Plaintiff, as a Florida corporation, certainly falls within the definition of a "consumer."

---

[5] The word "person" includes individuals, children, firms, associations, joint adventures, partnerships, estates, trusts, business trusts, syndicates, fiduciaries, corporations, and all other groups or combinations.  Fla. Stat. §1.01(3).

The FDUTPA declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. §501.204(1) (2005).  In enacting the FDUTPA, the Florida Legislature made clear that the statute should be "construed liberally" to protect "legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. §501.202(2) (2005); see Hanson Hams, Inc. v. HBH Franchise Company, LLC, 3002 WL 22768687 (S.D. Fla. 2003); see also Advanced Protection Technologies, Inc. v. Square Company, 390 F. Supp. 2d 1155 (M.D. Fla. 2005).  Therefore, when considering whether a defendant's actions support a finding of "unfair methods of competition, unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce," courts have regarded the concept as "extremely broad."  Hanson Hams at *2, citing Day v. Le-Jo Enterprises, Inc., 521 So. 2d 175, 178 (Fla. 3rd DCA 1988).  A practice will be deemed "unfair" when it "offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, (or competitors or other businessmen)."  See id.

**B.      FDUTPA does not apply to Liberty Syndicate 190 or Skeates.**

Pursuant to Fla. Stat. §501.212(4), FDUTPA does not apply to:

[A]ny person or activity regulated under laws administered by:
(a) The Office of Insurance Regulation of the Financial Services Commission;

* * *

(d) Any person or activity regulated under the laws administered by the former Department of Insurance which are now administered by the Department of Financial Services.

As a wholly owned subsidiary of Liberty Mutual Insurance Companies located in Boston Massachusetts and an underwriting syndicate subscribing through Boston underwriters at Lloyds, London providing insurance related services and coverage to certain Florida based entities, it appears to this Court that Liberty Syndicate 190 would be a "person regulated under the laws administered by the Office of Insurance Regulation of the Financial Services Commission" and/or "a person regulated under the laws administered by the former Department of Insurance which are now administered by the Department of Financial Services." Likewise, as a person who has provided insurance related services and coverage to certain Florida based entities, it appears to this Court that Skeates is a "person regulated under the laws administered by the Office of Insurance Regulation of the Financial Services Commission" and/or "a person regulated under the laws administered by the former Department of Insurance which are now administered by the Department of Financial Services." Furthermore, pursuant to the allegations contained within the Second Amended Complaint, it appears to this Court that the allegations concern insurance related contracts that would consist of "activity regulated under the laws administered by the Office of Insurance Regulation of the Financial Services Commission" and/or "activity regulated under the laws administered by the former Department of Insurance which are now administered

by the Department of Financial Services." Accordingly, the Court concludes that the provisions of the FDUTPA do not apply to claims against Defendants, Liberty Syndicate 190 and/or Skeates, relating to insurance activities that are otherwise regulated by the Office of Insurance Regulation of the Financial Services Commission or by the former Department of Insurance which are now administered by the Department of Financial Services. For this reason, Defendants' request to dismiss Count VII of the Second Amended Complaint pursuant to Rule 12(b)(6) is granted.

## Conclusion

Counts II, III and VII of the Second Amended Complaint are dismissed with prejudice pursuant to Rule 12(b)(6). Count VI of the Second Amended Complaint is dismissed without prejudice pursuant to Rule 12(b)(6). Plaintiff shall provide a more definite statement as to Counts I, IV and V pursuant to Rule 12(e).

It is therefore ORDERED AND ADJUDGED that:

1.      Defendants Certain Interested Underwriters at Llyod's, London, Members of Syndicate 190 for the Years of Account at Issue and Simon Skeates's Motion to Dismiss Second Amended Complaint or, In the Alternative, for More Definite Statement (Dkt. #45) is GRANTED as stated herein. Counts II, III and VII of Plaintiff's Second Amended Complaint are dismissed with prejudice.

2.      Plaintiff shall have twenty (20) days from the date of the entry of this Order
to file a third amended complaint consistent with this Order.

**DONE** and **ORDERED** in Tampa, Florida on January 26, 2007.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2006\06-cv-104.mt dismiss 45.wpd